IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALBERT DEWAYNE BANKS (01)<br>CHARLES FOSTER (03)<br>PATRICIA BRIDGET FOY (04)<br>JOHNNY LEE IVORY, III (05)<br>MARTYE MADABUTI MADKINS, III (06)<br>ZACHARY CARLYLE PATMON (07)<br>OTIS DEAN PONDS (08)<br>ANTHONY CARLYLE THOMPSON (10)<br>WALTER BERNARD TAYLOR (12)<br>KAREN ANTOINETTE JOHNSON (14)<br><br>    Defendants. | Case No. 13-cr-40060-DDC |

**MEMORANDUM AND ORDER**

Defendants have filed motions advancing several reasons the Court should suppress wiretap evidence (Docs. 339-341, 342, 346, 349, 356, 362, 377). Codefendants have joined in these motions. The government has filed a response to these motions (Doc. 396). The Court already has ruled on some of the issues raised by these motions (Docs. 420, 421 440). The Court now considers the remaining wiretap suppression issues defendants have raised by their motions, which include: whether the wiretap applications failed to demonstrate that normal investigative techniques have been tried and failed or appear reasonably likely to fail or be too dangerous (the "necessity requirement"); whether the orders authorized an invalid "roving wiretap;" whether probable cause supported the wiretap orders; and whether Judge Platt acted as a neutral and detached magistrate when he considered and approved the wiretap applications. For the reasons

1

set forth below, the Court denies defendants' motions to suppress wiretap evidence on these remaining grounds.

## Background

Investigators obtained wiretap orders in the final months of a thirteen-month investigation into a suspected narcotics-trafficking conspiracy. The investigation was a joint effort by the Kansas Bureau of Investigation, the Junction City Police Department, the Geary County Sherriff's Office, and the Riley County Police Department. Beginning in March of 2013, agents submitted applications for wiretap orders to Judge Platt, a District Court Judge for Kansas' Eighth Judicial District. Judge Platt issued eight wiretap orders under the Kansas wiretap statute, K.S.A. § 22-2514 *et seq*. The following list identifies the eight wiretap orders at issue, with the last four digits of the Electronic Serial Number ("ESN") assigned to each target phone in parentheses.

- Thompson Order #1 (1783) – issued March 5; expired April 4.[1]
- Banks Order #1 (6704) – issued March 5; expired April 4.[2]
- Ivory Order #1 (7176) – issued April 2; expired May 2.[3]
- Ponds Order #1 (0088) – issued April 2; expired May 2.[4]
- Thompson Order #2 (1783) – issued April 4; expired May 4.[5]
- Ivory Order #2 (7015) – issued April 12; expired May 12.[6]

---

[1] Doc. 379-1.

[2] Doc. 379-2.

[3] Doc. 379-3.

[4] Doc. 379-5.

[5] Doc. 379-7.

[6] Doc. 379-11.

- Banks Order #2 (9771) – issued April 12; expired May 12.[7]

- Thompson Order #3 (2893) – issued April 16; expired May 16.[8]

## Analysis

### A. Choice of Law

"Title III of the Omnibus Crime Control and Safe Streets Act, codified in 18 U.S.C. § 2510 *et seq.*, which preempts the field of electronic surveillance regulation, allows for concurrent state regulation, subject, at the minimum, to the federal regulatory requirements." *State v. Willis*, 643 P.2d 1112, 1114 (Kan. Ct. App. 1982). "Although a state may adopt a wiretap statue with standards more stringent than the federal requirements, a state may not adopt more permissive standards." *Id.* "Accordingly, where there are at issue provisions of a state wiretap statute which conform to their counterparts in the federal act, federal case authority has precedential value at least equivalent to state case authority, if any. Hence, federal case law in this area is generally, if not universally, treated as controlling authority." *Id.* The Court finds the Kansas and federal statutes, as they apply to the legal issues addressed in this order, are identical.[9] Accordingly, the Court looks to federal case law to resolve defendants' motions.

### B. The "Necessity" Requirement

---

[7] Doc. 379-13.

[8] Doc. 379-15.

[9] The Court views K.S.A. § 22-2516(1)(c) and 18 U.S.C. § 2518(1)(c) as coequals when it comes to the necessity requirement, and K.S.A. § 22-2516(10)(b) and 18 U.S.C. § 2518(11) as coequals when it comes to authorization for roving wiretaps. Probable cause and the requirement of a neutral and detached magistrate are both concepts borrowed from Fourth Amendment doctrine, and therefore apply equally to state and federal wiretap statutes alike. *United States v. Kaplan*, 526 F. App'x 208, 212 (3d Cir. 2013) (citing *United States v. Tehfe*, 722 F.2d 1114, 1118 (3d Cir. 1983)).

K.S.A. § 22-2516(1)(c) requires that an application for a wiretap order must include "a full and complete statement" whether "other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Title III imposes an identical requirement under federal law. *See* 18 U.S.C. § 2518(1)(c). Courts refer to this provision as the "necessity" requirement. *See, e.g.*, *United States v. Verdin-Garcia*, 516 F.3d 884, 889 (10th Cir. 2008). "Traditional investigative techniques include surveillance, infiltration or undercover work, questioning of participants, execution of search warrants, and the use of pen registers and trap-and-trace devices." *United States v. Ramirez*, 479 F.3d 1229, 1240 (10th Cir. 2007) (internal quotation omitted); *United States v. Ramirez-Encarnacion*, 291 F.3d 1219, 1222 n. 2 (10th Cir. 2002).

The necessity requirement does not mandate the police to exhaust all other investigative techniques. *Verdin-Garcia*, 516 F.3d at 889. Rather, courts should read the requirement in a "common sense fashion" and not "hypertechnically." *Id*. "The overall burden on the government 'is not great.'" *Id.* (quoting *United States v. Wilson*, 484 F.3d 267, 281 (4th Cir. 2007)). Although an issuing judge must find that law enforcement has made the required showing of necessity before issuing a wiretap order, *see* K.S.A. § 22-2516(1)(c), a defendant challenging a wiretap order bears the burden to prove the absence of necessity. *Ramirez-Encarnacion*, 291 F.3d at 1222. The Court will overturn an issuing judge's finding of necessity only for abuse of discretion. *United States v. Commito*, 918 F.2d 95, 98 (9th Cir. 1990).

### 1. "Necessity" Showing for Specific Individuals

Defendant Thompson claims that the applications failed to demonstrate that a wiretap was necessary to investigate him. Doc. 356 at 6. The Tenth Circuit has held that the government satisfies the necessity requirement by demonstrating necessity for the conspiracy as a whole.

4

*United States v. Killingsworth*, 117 F.3d 1159 (10th Cir. 1997); *United States v. Barrios*, 994 F. Supp. 1257, 1265 (D. Colo. 1998) ("[T]he Tenth Circuit required particularized necessity showings only as to the primary targets of the investigation. A primary target may be the conspiracy or criminal enterprise itself."). Defendant's argument, therefore, contradicts Tenth Circuit precedent. The Court will evaluate the necessity requirement by determining whether the wiretap applications demonstrated necessity for the conspiracy as a whole, rather than defendant-by-defendant.

### 2. Traditional Investigative Techniques

The supporting affidavits for the initial wiretap orders for defendants Banks, Ivory, Thompson and Ponds each explicitly discuss the investigatory techniques that agents have tried and whether other techniques appear reasonably likely to fail or be too dangerous. *See* Docs. 379-4, 379-6. The applications for subsequent wiretap orders on the same targets incorporate by reference the necessity statements contained in initial wiretap applications. *See*, *e.g.*, Docs. 379-8, 379-12, 379-14, 379-16. For each order, Judge Platt found that the supporting affidavits established necessity. *See* Docs. 379-1, 379-2, 379-3, 379-5, 379-7, 379-11, 379-13. The Court reviews each challenged affidavit to determine whether Judge Platt abused his discretion when he concluded that the affidavits established that law enforcement had tried traditional investigatory techniques or those techniques appeared reasonably likely to fail or be too dangerous.

#### a. Physical Surveillance

The affidavits submitted to Judge Platt discussed investigator's use of physical surveillance but found it had limited value. *See* Docs. 379-4 at 21-22, 379-6 at 23-34. The affidavits acknowledge that physical surveillance was useful to establish the existence of

meetings between coconspirators, but that wire intercepts were necessary to determine the purposes of the meetings. Doc. 379-4 at 23. Physical surveillance also presented the risk that suspects would notice the investigation and become more evasive and secretive. *Id.* Finally, the affidavit represented that physical surveillance was unlikely to reveal the full scope of the conspiracy, including additional coconspirators and sources of supply. *Id.* at 23-24.

In *United States vs. VanMeter*, the Tenth Circuit recognized the limitations of physical surveillance for determining the content of conversations and meetings between coconspirators. 278 F.3d 1156, 1164 (10th Cir. 2002) ("Investigators also explained that further visual observation would not establish the extortionate subject matter of conversations held in private locations or on the telephone."). The Tenth Circuit held that this concern justified a necessity finding with respect to physical surveillance. Similarly, the government here has shown that investigators used physical surveillance to some extent, but further use was likely to fail for the reasons discussed above.

### b. Cooperating Individuals and Undercover Agents

The Tenth Circuit has observed that one cannot reasonably expect infiltration and undercover work to succeed in investigating a "tight-knit" organization "exceedingly unlikely to accept outsiders into its confidence." *United States v. Verdin-Garcia*, 516 F.3d 884, 891 (10th Cir. 2008). The supporting affidavits suggest such circumstances existed here.

In this case, investigators used two confidential informants to investigate Banks but could not identify any informants to investigate the rest of the conspiracy. *See e.g.*, Doc. 377-4 at 23, 379-6 at 24. Based on their prior investigation of the organization, agents concluded they were unlikely to identify any cooperating individuals for a variety of reasons, including fear of retaliation. Agents determined that members of this organization do not distribute to persons

they did not know, trust or have past dealings. For this reason, agents doubted that an undercover agent or informant could to advance far enough within the ranks of the organization to access useful evidence. Accordingly, the Court finds that Judge Platt did not abuse his discretion to find a reasonable likelihood that the use of cooperating individuals and undercover agents appeared likely to fail or be too dangerous.

### c. Judicial and Administrative Subpoenas

The agents involved in this investigation formulated the consensus that, given the close ties among the inner circle of conspirators, it was unlikely any would choose to assist. Docs. 379-4 at 23-34, 379-6 at 25. Agents believed, therefore, that grants of immunity would not produce truthful information. Moreover, they concluded that serving subpoenas on members of the conspiracy risked alerting co-conspirators about the investigation. The Tenth Circuit has recognized that these risks support a finding that judicial and administrative subpoenas are likely to fail. *See VanMeter*, 278 F.3d at 1164.

### d. Search Warrants

The supporting affidavits reveal that agents considered using search warrants, but determined that search warrants alone were unlikely to reveal the total scope of the conspiracy, identify all of the conspirators, or disclose the precise role each played within the conspiracy. Docs. 379-4 at 23-34, 379-6 at 25. Search warrants would allow agents to recover only a small portion of evidence before alerting co-conspirators to the investigation. Thus, the Court concludes that Judge Platt did not abuse his discretion when he found the government had met its burden to show necessity under K.S.A. § 22-2516(1)(c) and 18 U.S.C. § 2518(1)(c).

### 3. Incorporation of Necessity Statement by Reference

Defendant Ivory alleges that the application for Ivory Order #2 failed to include a statement of necessity because it merely incorporates by reference the necessity statement in the application for Ivory Order #1.  Doc. 340 at 2-3.  Supporting his argument, Ivory cites *United States v. Mondragon*, 52 F.3d 291, 293 (10th Cir. 1995).  In that case, the Tenth Circuit suppressed wiretap evidence where the application for a second wiretap completely omitted any discussion of the necessity requirement, either expressly or by incorporating a prior affidavit.  *Id.* at 293.  In *Mondragon*, however, the Tenth Circuit distinguished the facts before it from *United States v. Dennis*, 786 F.2d 1029 (11th Cir. 1986).  In *Dennis*, the affidavit supporting the second wiretap application contained a brief necessity statement, but incorporated the first affidavit by reference, which explained in full why normal investigative procedures would not succeed.  *Id.* at 1034.  The court held incorporating an earlier showing by reference was an appropriate method to demonstrate necessity so long as the incorporated information sufficiently demonstrated necessity for the new wiretap application.  *Id.* at 1037.

The analysis in *Dennis* applies equally here.  In this case, the government included a necessity statement in the affidavit supporting Ivory Order #2 and incorporated by reference the more complete explanation of necessity from the affidavit supporting Ivory Order #1.  Doc. 379-12 at 2.  The necessity explanation in the affidavit supporting Ivory Order #1 was sufficient to support a necessity finding for Ivory Order #2.  Accordingly, the Court finds the government's showing for Ivory Order #2 made the requisite showing of necessity.  The Court therefore rejects Ivory's necessity argument.

### C. Orders Were Sufficiently Particular and did not Create a "Roving" Wiretap

A standard wiretap order must specify the "nature and location of the facilities from which or the place where the communication is to be intercepted."  K.S.A. § 22-2516(1)(b)(iii).

A roving wiretap authorization dispenses with this specification requirement, but an application for a roving wiretap must meet additional statutory criteria. K.S.A. § 22-2516(10)(b)[10] sets forth the criteria for a roving wiretap:

> (i) The application is by a law enforcement officer and is approved by the attorney general and the county or district attorney where the application is sought;
> (ii) the application identifies the person believed to be committing the offense and whose communications are to be intercepted and the applicant makes a showing of a purpose, on the part of that person, to thwart interception by changing facilities; and
> (iii) the judge finds that such purpose has been adequately shown

In this case, each wiretap order states that it applies "also to any other telephone number." *See*, *e.g.*, Docs. 379-8, 379-12, 379-14, 379-16. There is no further description of the nature or location of these "other" telephones. Defendants contend that the orders purported to authorize a roving wiretap, but because they did not meet the additional statutory requirements imposed by K.S.A. § 22-2516(10)(b), the orders were facially invalid.

The government denies that it sought a roving wiretap order or received such and order. The government explained that the "any other phone" language was included because users can remove the chips containing the ISMI numbers and place them into a different phone. In that situation, the "any other phone" language would authorize interception of calls transmitted over the new phone. The Ninth Circuit addressed a challenge to nearly identical specification language in *United States v. Oliva*, 705 F.3d 390, 400-01 (9th Cir. 2012). The Ninth Circuit held that the wiretap orders met the specification requirement of 18 U.S.C. § 2518 (1)(b)(ii) by identifying a target telephone number and "any changed telephone number or any other telephone number assigned to or used by the instrument bearing the same ESN and/or ISMI as

---

[10] The federal counterpart is 18 U.S.C. § 2518(11).

the [t]arget [p]hones." *Id*. at 400.  The court also held that such language did note create "de facto roving wiretaps." *Id.* at 401.

The Ninth Circuit's analysis is persuasive and it applies here.  The orders do not grant authority to wiretap multiple telephones; they simply recognize that a cell phone user can, as a means of thwarting an investigation, obtain a new phone number for a phone with a given ESN, or have his existing phone number assigned to a new cell phone with a different ESN.  That the orders covered those possibilities did not turn them into general wiretap authority, because each was still limited to a narrow and particular target.  Thus, the Court finds that the government neither sought authorization for nor executed a roving wiretap.  As a result, the Court need not reach the question whether the wiretap orders satisfied the statutory requirements for a roving wiretap.

The wiretap orders needed to satisfy the particularity requirements for standards wiretaps only, and the Court concludes that each one did.  Each wiretap order provided a phone number, ESN, a particular description of the conversation to be intercepted, as well as the subscriber, primary user, and MSID of each target phone.  *See* Docs. 379-8, 379-12, 379-14, 379-16.  The Court finds these descriptions sufficiently specified the "nature and location of the facilities from which or the place where the communications are to be intercepted," thus satisfying the statutory prerequisites for a "standard" wiretap.  *Oliva*, 705 F.3d at 400; *see also United States v. Goodwin*, 141 F.3d 394, 403 (2d Cir. 1997) (government satisfied particularity requirement for mobile phone by specifying telephone number and ESN of tapped phones).

### D. An Adequate Showing of Probable Cause Supported Each Wiretap Order

Defendants Ivory and Ponds allege that the wiretap orders were facially deficient because the applications failed to demonstrate probable cause.  Docs. 339, 356, 362.  Both the Kansas

and federal statute require an issuing judge to determine that probable cause exists to believe a targeted individual is committing, has committed, or is about to commit a particular enumerated offense, and that interception will reveal commutations about that particular offense. K.S.A. § 22-2518(3); 18 U.S.C. § 2518(3). The Court already has held that narcotics distribution and conspiracy to distribute narcotics are crimes for which a wiretap order may issue. Doc. 445. The Court now holds that that each application demonstrated sufficient probable cause that defendants committed or were comitting those crimes.

### 1. Defendant Ivory

Defendant Ivory alleges that there is nothing in the affidavit indicating that the targeted phone was actually associated with him. Ivory also denies that any of his calls to Banks were evidence of drug trafficking.

Investigators monitoring Banks' phone intercepted several calls from 929-268-6183 (the "6183 number"). On one of those occasions, Banks told the person using the 6183 number that he was "about to go over here and sit in front of your mom['s] house." Doc. 379-4 at 11. Officers conducting surveillance on a house known to belong to Ivory's mother then observed Banks arrive at that home and leave with Ivory about 30 minutes later. *Id*. at 13. On a second occasion, Banks called the 6183 number and told the person who answered to meet him at his apartment complex. *Id.* at 15. An agent then followed Banks to his apartment complex, where he saw Ivory and Banks meet and walk into the apartment complex together. *Id.* at 16. Soon after, the two left Banks' apartment and went to Ivory's mother's house. *Id.* The Court finds that these conversations and the accompanying surveillance provided sufficient probable cause for Judge Platt to connect Ivory to the 6183 number.

11

The supporting affidavit also demonstrated that the contents of Ivory's calls likely evidenced drug trafficking. The supporting affidavit for Ivory Order #1 details the contents of several calls between Banks and Ivory intercepted under Banks Order #1 where the two discuss drug trafficking. *See* Docs. 379-4 at 5-7, 14-15. The affidavit also contained evidence from a confidential source who stated Ivory was possibly a source of supply for Banks and Thompson. Doc. 379-4 at 7. Based on this evidence, Judge Platt did not abuse his discretion to conclude that there was probable cause to believe that Ivory was committing drug crimes.

### 2. Defendant Ponds

Defendant Ponds also argues that the supporting affidavits failed to link him to the number 316-347-0088 (the "0088 number"). This argument is also without merit. The supporting affidavit relates a conversation intercepted under the Thompson Order #1, where Thompson and the person on the 0088 number discuss getting a motel room at the Quality Inn. Doc. 379-6 at 8-9. During that call, the person using the 0088 number said to Thompson, "room is like eighty three dollars . . . just tell them you're paying for me another day, Otis Otis Ponds." *Id.* at 379-9. Detective Babcock then drove to the motel room and confirmed that Otis Ponds had in fact rented a room at the Quality Inn. *Id.* at 14. The affidavit also describes another conversation between Thompson and a person on the 0088 number, during which the person on the 0088 number states "Man, hell yeah, my name is Devon Otis Ponds partner." *Id.* at 14-15. These conversations alone support Judge Platt's conclusion that there was probable cause to link the 0088 number to Ponds.

### E. Judge Platt Acted as a Neutral and Detached Magistrate

Finally, Banks argues Judge Platt did not act as a "neutral and detached" magistrate when he considered the wiretap applications and issued the orders. *See* Doc. 343. The Supreme Court has stated the following requirements for an issuing magistrate:

> [A]n issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search.

*Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). Banks claims that the affidavit lacked "substance to back up the boilerplate assertions" in the affidavit. Doc. 343 at 9. Banks also argues that Judge Platt's should have conducted an *in camera* hearing to make the government put forth a more thorough showing of necessity. *Id.*

The Court disagrees. Supporting his argument, Banks has merely recited previous challenges to the wiretap orders that the Court has already denied on the merits. Because there is ample evidence to support Judge Platt's finding of necessity, that finding cannot serve as a basis to conclude that he did not act as a neutral and detached magistrate. Moreover, Judge Platt was under no duty, statutory or otherwise, to subject investigators to a "question and answer period." *See id.* at 9. Reviewing the supporting affidavits, the Court finds that Judge Platt recieved sufficient information to conclude that the government had satisfied the necessity requirement. The Court therefore rejects Banks' argument that Judge Platt failed to act as a neutral and detached magistrate.

## **Conclusion**

This Order terminates all remaining pending motions and arguments seeking suppression of wiretap evidence. The only surviving wiretap suppression issue whether the interception exceeded Judge Platt's territorial jurisdiction, which the Court cannot resolve until it has considered the government's location evidence and the defendants' related objections.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Ivory's motions to suppress wiretap evidence (Docs. 339, 340, 341) are denied; defendant Banks' motion to suppress wiretap evidence (Doc. 342) is denied; defendant Johnson's motion to suppress wiretap evidence (Doc. 346) is denied; defendant Taylor's motion to suppress wiretap evidence (Doc. 349) is denied; defendant Thompson's motion to suppress wiretap evidence (Doc. 356) is denied; defendant Ponds' motion to suppress wiretap evidence (Doc. 362) is denied; and defendant Madkins' motion to suppress wiretap evidence (Doc. 377) is denied. To the extent other defendants joined or relied upon arguments the Court denied in this Order, those motions are also denied.

**IT IS SO ORDERED.**

Dated this 17th day of October, 2014, at Topeka, Kansas.

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**