IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>ALBERT DEWAYNE BANKS (01),<br>PATRICIA BRIDGET FOY (04),<br>JOHNNY LEE IVORY III (05),<br>MARTYE MADABUTI MADKINS III (06),<br>OTIS DEAN PONDS (08),<br>ANTHONY CARLYLE THOMPSON (10),<br>KAREN ANTOINETTE JOHNSON (12),<br>and<br>WALTER BERNARD TAYLOR (14),<br><br>      Defendants. | Case No. 13-cr-40060-DDC |

## MEMORANDUM AND ORDER

Defendant Madkins has filed a motion (Doc. 441) asking the Court to reconsider its conclusions in its Memorandum and Order (Doc. 420) denying several defendants' motions to suppress for failing to seal wiretap recordings immediately (the "Sealing Order"). Specifically, Madkins challenges the Court's conclusion that a duty to seal the wiretap recordings did not arise when Thompson Order #2 expired because Thompson Order #3 extended it. Defendant Banks has filed a motion applying Madkins' argument to Banks Order #2 (Doc. 447) and defendant Ivory has filed a motion applying the same argument to Ivory Order #2 (Doc. 466). Defendants Ponds (Doc. 448), Johnson (Doc. 453), Thompson (Doc. 463), Taylor (Doc. 464), and Foy (Doc. 465) have also joined Madkins' motion. The government has filed a response (Doc. 475). Defendants' motions question whether the Court properly determined that these wiretap orders qualified as extensions of earlier orders, thereby delaying the sealing requirement until the later

1

orders expired. The Court finds that it erred in concluding Thompson Order #3, Banks Order #2, and Ivory Order #2 qualified as extensions, but denies defendants' motions because the error was harmless.

### A. Background

Investigators obtained wiretap orders in the final months of a thirteen-month investigation into a suspected narcotics-trafficking conspiracy. The investigation was a joint effort by the Kansas Bureau of Investigation, the Junction City Police Department, the Geary County Sherriff's Office, and the Riley County Police Department. Beginning in March of 2013, investigators submitted applications for wiretap orders to Judge David Platt, a District Court Judge for Kansas' Eighth Judicial District. Judge Platt issued eight wiretap orders under the authority conferred on him by the Kansas wiretap statute, K.S.A. § 22-2514 *et seq*. The dates of issuance and expiration of each order are set forth below:

- Thompson Order #1 (1783) – issued March 5; expired April 4.[1]
- Banks Order #1 (6704) – issued March 5; expired April 4.[2]
- Ivory Order #1 (7176) – issued April 2; expired May 2.[3]
- Ponds Order #1 (0088) – issued April 2; expired May 2.[4]
- Thompson Order #2 (1783) – issued April 4; expired May 4.[5]
- Ivory Order #2 (7015) – issued April 12; expired May 12.[6]

---

[1] Doc. 379-1.

[2] Doc. 379-2.

[3] Doc. 379-3.

[4] Doc. 379-5.

[5] Doc. 379-7.

2

- Banks Order #2 (9771) – issued April 12; expired May 12.[7]
- Thompson Order #3 (2893) – issued April 16; expired May 16.[8]

The first orders expired on April 4. The last order expired on May 16. It is undisputed that the government presented the recordings to Judge Platt for sealing on June 3.

Defendants Taylor, Ponds, and Madkins previously filed motions arguing that the Court must suppress wiretap evidence because the government failed to seal the wiretap recordings immediately after each wiretap order had expired, as required by K.S.A. § 22-2516(7)(A) and 18 U.S.C. § 2518(8)(a). At a motions hearing held on August 21 and 22, the Court heard argument on these motions and received testimony from KBI Special Agent Glen Virden and Judge Platt. On August 29, 2014 the Court issued the Sealing Order, which denied defendants' motion to suppress wiretap evidence for failure to seal the recordings immediately.

### B. Standard for Motion to Reconsider

D. Kan. Rule 7.3(b) requires a party seeking reconsideration of a non-dispositive order to file a motion to reconsider within 14 days following the date the court issued the order the party wishes to challenge. The Court issued the Sealing Order on August 29, 2014, and Madkins filed his motion seeking reconsideration of the Sealing Order on September 15, 2014. Other defendants filed motions to join or adopt Madkins' argument after September 15. Thus, all of these motions are untimely because each was filed more than 14 days after the Court issued the Sealing Order. In the interests of justice, however, the Court will treat each defendant's motion to reconsider as timely.

---

[6] Doc. 379-11.

[7] Doc. 379-13.

[8] Doc. 379-15.

A court has discretion when deciding to grant a motion to reconsider. *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995). Under D. Kan. Rule 7.3(b), a motion to reconsider must be based on one of three grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." The government argues defendants have failed to address this standard and have not shown that any of these grounds for reconsideration exist. Madkins' motion, however, argues that the Court erred when it determined that certain orders qualified as extensions. Consequently, the Court will review defendants' motions to determine whether the court erred and whether the error undermines the Court's ultimate ruling. *See Hoffman v. Martinez*, 92 F. App'x 628, 632 (10th Cir. 2004) (affirming district court's denial of a motion to reconsider where the court's error was harmless).

### C. The Sealing Order

K.S.A. § 22-2516(7)(A) provides, "Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under such judge's directions." *See also* 18 U.S.C. § 2518(8)(a) (describing an identical sealing requirement under federal law). The government can satisfy the sealing requirement one of two ways: either by sealing the recordings immediately or by coming forward with a "satisfactory explanation" for failing to seal the recordings immediately. *United States v. Ojeda Rios*, 495 U.S. 257, 263 (1990) (applying the identical federal statute). In the investigation at issue, investigators did not present the tapes to Judge Platt for sealing until June 3, 2014. The Court considered two delays where wiretap orders had expired and the government did not seal the recordings immediately: (1) the delay between the expiration of the first round

4

of wiretap orders and the June 3 sealing, *i.e.*, April 4, and (2) the eighteen-day delay after the expiration of the last wiretap order and the June 3 sealing, *i.e.*, May 16.

The government's explanation for the second delay asserted that agents relied reasonably and in good faith on Judge Platt's instructions about sealing the recordings. In finding this explanation satisfactory, the Court relied on *United States v. Carson*, 969 F.2d 1480 (3d Cir. 1992), which held that a mistake of law can excuse a delay so long as the mistake was "objectively reasonable" at the time of the delay. Doc. 420 at 6-7. The Court applied *Carson*'s holding to Special Agent Virden's understanding of the sealing requirement as Judge Platt had communicated it to him. *Id.* at 7. The Court concluded that Special Agent Virden's reliance on instructions from the issuing judge for complying with the sealing requirement was a satisfactory explanation for failing to seal the recordings immediately because his reliance on those instructions was "objectively reasonable." *Id.*

> Special Agent Virden remained mindful of the sealing requirement, and sought instruction from Judge Platt about how to comply with it. When the orders expired, Special Agent Virden contacted Judge Platt to discuss sealing the recordings. Judge Platt announced that his schedule would accommodate delivery on June 3, 2013. While it is possible that Special Agent Virden could have conducted or requested independent legal research on the sealing requirement, his failure to do so was not "unreasonable." In light of the discrepancy in legal training between Judge Platt and Special Agent Virden, and in light of Judge Platt's status as a judge, the Court finds that Special Agent Virden acted reasonably in relying on Judge Platt's instructions about complying with the sealing requirement.

*Id.* Because it found the government's explanation satisfactory, the Court determined that the government's failure to seal the recordings immediately did not mandate suppression.

In contrast, for the first delay, the Court concluded that the expiration of Banks Order #1, Ivory Order #1, and Thompson Order #2 never triggered the sealing requirement because Judge Platt issued subsequent "extensions" of those orders. *See* K.S.A. § 22-2516(7)(A) ("upon the expiration of the period of the order, or *extensions thereof*, such recordings shall be . . . sealed

5

under [the issuing] judge's directions") (emphasis added).  The Court again relied on *Carson*, which held that a subsequent order qualifies as an extension of a previous order "so long as the subject, location, and criminal subject matter of both surveillances is the same."  969 F.2d at 1487-88.  Thus, the Court concluded that this first delay did not require an explanation because the sealing requirement did not arise until the orders it deemed extensions—Banks Order #2, Ivory Order #2 and Thompson Order #3—expired.  Madkins' Motion for Reconsideration challenges this aspect of the Sealing Order.

### D.  The "Same Location" Requirement for Extension Orders

Madkins contends that the Court erred by concluding that Thompson Order #3 qualified as an extension of Thompson Order #2 because those orders targeted different "locations."  Doc. 441 at 2-4.  Madkins argues that a cellular phone's "location," for purposes of wiretap authorization, is its ESN or ISMI number.

> That word—"location"—is a term of art in Title III.  The law requires an interception order to specify the "location of the communication facilities as to which, or the place where, authority to intercept is granted[.]"  The Tenth Circuit interprets "communication facilities" to mean the physical phone to be tapped.  Since it is inherently mobile, a cellular phone's "location" may be identified by its electronic serial number or its international mobile subscriber identity number.
>
> An order is only an extension if it involves the same location.  And a cellular phone's location is its ESN or IMSI number.  If a subsequent order identifies a different ESN or IMSI number, it cannot be an extension of a prior order.

Doc. 441 at 3-4 (citations omitted).  Accordingly, a subsequent wiretap order cannot extend a previous order if it specifies a different ESN or ISMI number.  Makdins insists that "established United State Supreme Court precedent" requires this interpretation.  Doc. 441 at 1.

Neither Title III nor Kansas' wiretap statute define the "location" of a wiretap.  The United States Supreme Court also has not defined the term, contrary to Madkins' assertion.  In

6

support of his argument, Madkins cites cases where courts have held that an ESN or ISMI number satisfies 18 U.S.C. § 2518(1)(b)(ii)'s requirement that a wiretap order specify "the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted." Doc. 441 at 4 (citing *United States v. Oliva*, 705 F.3d 390, 401 (9th Cir. 2012)). Neither do the traditional, wireline telephone cases cited by Madkins answer this question. *United States v. Ojeda Rios*, 875 F.2d 17, 21-22 (2d Cir. 1989), *vacated and remanded on other grounds by* 495 U.S. 257 (1990); *United States v. Vastola*, 915 F.2d 865, 874-75 (3d Cir.1990). Both *Ojeda Rios* and *Vastola* addressed wireline telephones, which are affixed to specific physical premises. Those cases held that the government meets the same location requirement so long as the extension targeted a phone occupying the same physical premises as the previous order. *Ojeda Rios*, 875 F.2d at 21; *Vastola*, 915 F.2d at 874. Madkins' authority, therefore, supports only two limited propositions: (1) an order must target the same location as the previous order to qualify as an extension, and (2) for cellular phones, one way an order can satisfy the same location requirement is by specifying the same ESN or ISMI number. Those cases do not answer the question, however, whether a different ESN or ISMI number automatically precludes a subsequent order from qualifying as an extension.

The Court has located a decision from outside our Circuit holding that a subsequent order must target the same phone number as a previous order to qualify as an extension. In *United States v. Hermanek*, the government initially obtained wiretap orders authorizing interception of communications to and from a cellular phone number ending in in 8340. 289 F.3d 1076, 1085 (9th Cir. 2002). After the suspect stopped using the 8340 number, the government obtained two more successive orders authorizing the authority to intercept the suspect's new phone and new phone number. *Id.* The court concluded that the subsequent orders could not qualify as

7

extensions of the earlier order because each targeted a different phone number. *Id.* The Ninth Circuit identified two reasons for its conclusion.

First, the Ninth Circuit examined the structure of Title III and determined that the statutory scheme ties wiretap authority to specific communications facilities or locations. *Id.* at 1086. For example, under Title III's particularity requirement, an application for a wiretap order must specify "a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted." *Id.* (quoting 18 U.S.C. § 2518(1)(b)(ii)). Similarly, Title III's probable cause provision requires a judge to find probable cause to believe that the "facilities from which, or the place where . . . communications are to be intercepted are being used" in connection with the suspected offense. *Id.* (quoting 18 U.S.C. § 2518(3)(d)). Based on the fashion the wiretap statute confines wiretap authority to specific locations and communications facilities, the Ninth Circuit concluded "an order is an extension of an earlier order only if it authorizes continued interception of the same location or communications facility specified by the prior order." *Id.* As a result, an order targeting a different telephone number cannot qualify as an extension of a previous order.[9]

Next, the Ninth Circuit rejected the government's argument that the Court should relax the same location requirement for cellular phones because they are inherently mobile:

> By pointing out that cellular telephones may be moved easily, the government perhaps seeks to establish that applying *Ojeda Rios* and *Vastola* to cellular phones would impose administrative burdens on the government that would frustrate surveillance in a manner that Congress could not have intended. This argument, however, is not borne out. There is indeed a burden imposed on the government when a wiretap based on a specific cell phone number is no longer effective. The

---

[9] The Ninth Circuit's decision focused on differences in phone numbers, rather than ESN or ISMI numbers. That distinction is not relevant here because the orders at issue target phones with different ESN or ISMI and different phone numbers.

8

> government must solicit the court for new authority to intercept the new phone number. This burden, however, is imposed by the Title III authorization requirements and exists independent of anything we have to say about the sealing requirement codified in § 2518(8)(a). The government has not explained why it would be burdensome to seal existing records contemporaneous with obtaining authority to wiretap a new facility or location.

*Id.* at 1087. Moreover, the court explained, the existence of roving wiretap authorizations, which permit the government to intercept communications from *any* cellular phone number used by a suspect, provides investigators "ample latitude to cope with the unique characteristics of cellular technology." *Id.* In other words, the court need not reevaluate Title III's requirements in light of the challenges of cellular phones because Title III already provides a mechanism for law enforcement to deal with those challenges. If the government anticipates a target will change cellular phones to evade surveillance, it may seek a roving wiretap. But if the government seeks only a non-roving authorization, it must comply with requirements for that type of authorization, including the same location requirement for extensions. *Id.*

The Court finds the Ninth Circuit's analysis persuasive. Consequently, upon reconsideration, the Court concludes that it erred as a matter of law when in determined that Banks Order #2, Ivory Order #2 and Thompson Order #3 qualified as extensions of the earlier orders on those targets. Each of these orders targeted new phone numbers and therefore could not qualify as extensions under *Hermanek*'s analysis. Because those initial orders were not extended, the government was obligated to seal the recordings immediately upon the expiration of Banks Order #1, Ivory #1, and Thompson #2. It did not do so. As a result, whether wiretap evidence obtained under those authorizations is admissible depends on whether the government has offered a satisfactory explanation for its failure to seal immediately the recording from the first monitoring period.

### E. The Government's "Satisfactory Explanation" for the First Delay

Having concluded that the sealing requirement arose when Banks Order #1 (April 4), Ivory Order #1 (April 12), and Thompson Order #2 (April 16) expired, the Court must next determine whether the explanation that excused the second delay also excuses the first. In other words, the Court must determine whether the agents were relying on instructions from Judge Platt when they failed to seal the recordings from the first monitoring period immediately. This exercise consists of two parts: first, the Court must determine whether the explanation the government already has offered—reliance on instructions from Judge Platt—is indeed satisfactory; second, the Court must determine whether the explanation is relevant to the dates when the government's first sealing obligation arose.

#### 1. Whether the Government's Explanation is Satisfactory

In the Sealing Order, the Court found the government's excuse for the second delay satisfactory because the delay resulted from an "objectively reasonable" mistake of law. The Court concludes that the government's explanation for failing to seal the recordings for these three orders immediately after they expired is satisfactory for the same reason it found the government's explanation for the second delay satisfactory. Doc. 420 at 6-7 (citing *Ojeda Rios*, 495 U.S. at 266; *Carson*, 969 F.2d at 1494-95).

> In *Carson*, the government sought to excuse its failure to seal the wiretap recordings immediately because a junior prosecutor innocently misunderstood the instructions of his supervisor about when the tapes had to be sealed. *Id.* at 1494. The junior prosecutor understood his supervisor's instruction to seal the tapes at the "end of the interception process" to mean the conclusion of the entire "investigation," rather than when each individual order expired. *Id.* at 1495. For this sort of misunderstanding to qualify as "objectively reasonable," the Third Circuit held, the junior prosecutor must have acted as a "reasonably prudent" attorney when he investigated the "legal question involved." *Id.* at 1494. The circuit court held that it was for the district court to determine whether the attorney's reliance on his supervisor's instructions was reasonable in light of the surrounding circumstances. *Id.* at 1495.

Doc. 420 at 6-7.

The government explained that it is the KBI's practice to record all of a given suspect's phone calls onto a single tape drive. The KBI did not pull and seal the tape drives immediately after the conclusion of each wiretap order because, for each suspect, recording pursuant to subsequent orders continued on the same tape drive. Judge Platt testified that he instructed Special Agent Virden to follow this procedure because he believed the tape drives were more secure at the KBI facility than in Judge Platt's credenza. Judge Platt's understanding of the sealing requirement was inaccurate, as the statute does not permit a judge to postpone compliance with the sealing requirement in favor of another method to maintain the recordings. But in light of the discrepancy in legal training between Judge Platt and Special Agent Virden, and in light of Judge Platt's status as a judge, the Court finds that Special Agent Virden acted as a "reasonably prudent" investigator when he relied on Judge Platt's instructions to continue recording on the same tape drives.

The Court again concludes that the factors identified by the Tenth Circuit in *United States v. Cline* 349 F.3d 1276 (10th Cir. 2003) also favor a finding that the government's explanation is satisfactory. In *Cline*, the Tenth Circuit held that an explanation for failing to seal is more likely to be satisfactory when there is "no evidence of bad faith and no indication that the recordings were tampered with or that there was any tactical advantage" gained by the government because of the delay. *Id.* at 1284. Here, Special Agent Virden acted reasonably and in good faith when he discussed how to maintain the recordings with Judge Platt; he did not disregard the sealing requirement intentionally; there was no risk of tampering with the recordings; and no defendant has sustained any prejudice from the delay. Accordingly, the Court concludes that the government's explanation is satisfactory.

### 2. Timing

Madkins argues that the government's explanation cannot excuse the first delay because neither Judge Platt nor Special Agent Virden can recall when they first discussed the sealing requirement. If the government's explanation excuses its delay in sealing the first round of recordings, Judge Platt must have instructed agents on or before the expiration of each order at issue. In other words, Judge Platt must have instructed the agents that it was acceptable to continue recording on the same tape drive on or before April 4.

To determine whether Judge Platt instructed agents about the sealing requirement before April 4, the Court has reviewed Judge Platt and Special Agent Virden's testimony at the motion hearing. Their testimony makes it clear: there were at least two meetings where Judge Platt and Special Agent Virden discussed the sealing requirement. One of them occurred in the middle of May, when Special Agent Virden alerted Judge Platt to the need to seal the recordings and Judge Platt made arrangements to seal the recordings on June 3. Those instructions excused the delay the Court called the "the second delay."

But Judge Platt and Special Agent Virden also testified about an earlier meeting where they discussed the sealing requirement. Judge Platt testified that, before the first monitoring period ended, he instructed Special Agent Virden to continue recording on the same tape drives. Judge Platt and Special Agent Virden recalled that this conversation occurred before the first monitoring period ended and as they were preparing new orders because some of the suspects had changed phones. The first phones expired on April 4 and Judge Platt issued the new orders for the changed phones shortly after that date. Thus, the Court finds that Judge Platt and Special Agent Virden's testimony establishes that Judge Platt instructed Special Agent Virden to continue recording on the same tape drives instead of sealing the recordings before April 4. The

Court finds this testimony credible, and it means that the government's explanation had arisen before Banks Order #1, Ivory Order #1 and Thompson Order #2 expired.  Accordingly, the Court concludes that the government's explanation is both substantively satisfactory and chronologically relevant to the first delay.

### F.  Conclusion

Defendants are correct that the Court erred by determining that subsequent wiretap orders targeting Banks, Thompson and Ivory qualified as extensions of previous orders.  Those orders did not qualify as extensions and did not delay the sealing requirement for the original orders.  However, the Court declines to suppress the evidence obtained under those orders because Judge Platt instructed Special Agent Virden to continue recording wiretap intercepts on the same tape drives before the first orders expired, and Special Agent Virden acted reasonably when he relied on Judge Platt's instructions.  As a result, the Court's conclusion that investigators had no duty seal the first round of wiretap recordings immediately was a harmless error.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Madkins (Doc. 441), Banks (Doc. 447), and Ivory's (Doc. 466) Motions to Reconsider are denied.  The other defendants' motions are denied to the extent they joined Madkin's argument (Docs. 448, 453, 463, 464, 465).

**IT IS SO ORDERED.**

**Dated this 26th day of November, 2014, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**