IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 13-cr-40060-DDC |
| ALBERT BANKS (1), and<br>MARTYE MADKINS, III (6), | |
| Defendants. | |

**MEMORANDUM AND ORDER**

Defendant Martye Madkins has filed a motion seeking release from pretrial detention (Doc. 557). His motion argues that two "ends-of-justice" continuances the Court ordered were deficient and thus failed to exclude certain time from the 90-day limit for pretrial detention under 18 U.S.C. § 3164(b). Accounting for this improperly excluded time, Mr. Madkins asserts, his pretrial detention has exceeded 90 days, and therefore the Court must order his immediate release. He also argues that his prolonged detention violates the due process clause of the Fifth Amendment to the United States Constitution. Defendant Albert Banks has filed his own motion for release (Doc. 564), which seeks to adopt Mr. Madkins' arguments. The government has filed responses opposing each defendants' motion (Doc. 582, 587). For the reasons explained below, the Court denies Mr. Madkins' and Mr. Banks' motions for release.

A. **Defendant's Motion Under § 3164(b)**

Mr. Madkins' argument under 18 U.S.C. § 3164(b) turns on whether the two ends-of-justice continuances the Court ordered—on June 24, 2013 (Doc. 70, the "June 24 Continuance"),

and January 6, 2014 (Doc. 249, the "January 6 Continuance")—were sufficient to stop Mr. Madkins' 90-day pretrial detention clock. If they were, Mr. Madkins concedes, his pretrial detention has not exceeded 90 non-excludable days, and his motion must be denied.

### 1. "Ends-of-Justice" Continuances Under 18 U.S.C. § 3161(h)(7)(A)

Under § 3164(b), time that is excludable for purposes of a defendant's speedy trial clock also is excludable against a defendant's 90-day pretrial detention clock. 18 U.S.C. § 3164(b) ("[P]eriods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section . . . ."). As pertinent here, such excludable time includes:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). These delays only qualify as excludable time, however, if the court granting an ends-of-justice continuance "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* Specifically, a court must identify in the record its analysis of the following factors:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because

>> the facts upon which the grand jury must base its determination are unusual or complex.
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i)-(iv).

As the Tenth Circuit has emphasized, the requirement that courts make on the record findings about the circumstances warranting a continuance is an important one. *See United States v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009). In *Toombs*, the Circuit reminded district courts that the "'[ends-of-justice] exception to the otherwise precise requirements of the [Speedy Trial] Act was meant to be a rarely used tool for those cases demanding more flexible treatment.'" *Id.* (quoting *United States v. Doran*, 882 F.2d 1511, 1515 (10th Cir. 1989)). The statute requires clear and on the record findings for two reasons—"[i]t both ensures the district court considers the relevant factors and provides [appellate courts] with an adequate record to review." *Id.* (citing *Doran*, 882 F.2d at 1515). A court's failure to identify its reasons for granting an ends-of-justice continuance "'creates the unnecessary risk of granting continuances for the wrong purposes, and encourages overuse of this narrow exception.'" *Id.* (quoting *Doran*, 882 F.2d at 1515). Mr. Madkins argues that the June 24 Continuance and the January 6 Continuance each failed to meet this requirement, and, as a result, the delays occasioned by them are not excludable against his 90-day pretrial detention clock. The Court addresses his argument as it applies to each continuance, below.

### 2. The June 24 Continuance

Mr. Madkins argues that it is not even clear whether the June 24 "Continuance" was a continuance at all. The Court concludes that it was not. The order merely designated the case as complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii). The order acknowledged, as Mr. Madkins argues here, that a "complex case designation does not exempt the case from the mandates of the Speedy Trial Act altogether." Instead, it "is merely one of four factors this Court may consider under § 3161(h)(7)(A) when granting an 'ends-of-justice' continuance." Doc. 70 at 2-3. But the Court never mentioned an ends-of-justice continuance, nor did it make any of the on the record findings necessary to render the delay occasioned by such a continuance excludable. *See id.* at 3 (characterizing the complex-case designation as an "initial declaration" that will "assist all parties in fashioning subsequent extension motions should any become necessary"). The Court thus concludes that it did not order an ends-of-justice continuance in the June 24 order designating the case complex.

But this conclusion, by itself, does not entitle Mr. Madkins to the relief he seeks. Much of the time between June 24 and January 6 was excludable for other reasons. Section 3161(h)(1) excludes, among other situations, the "reasonable time" from filing to disposition of pretrial motions filed by a defendant or his codefendants. 18 U.S.C. § 3161 (h)(1)(D); *see also United States v. Vogl*, 374 F.3d 976, 983 (10th Cir. 2004) (holding that delays attributable to one defendant are applicable to all codefendants for purposes of the Speedy Trial Act). With this rule in mind, the Court has reviewed the relevant chronology of this case. By the Court's count, 64 non-excludable days elapsed on Mr. Madkins' pretrial detention clock between his Rule 5

Arraignment and the January 6 Continuance.[1] Of those 64 days, 23 days are excludable for one or more of the reasons set forth in § 3161(h)(7)(A). Thus, 41 countable days elapsed between arraignment and the Court's January 6 Continuance. This continuance and the Court's subsequent September 30, 2014 continuance (Doc. 479) purport to exclude all time that has elapsed since January 6, 2014. The latter continuance is not challenged by Mr. Madkins' motion. If the January 6 Continuance actually excluded the time it purported to exclude, then Mr. Madkins is well within § 3164(b)'s 90-day pretrial detention clock. The Court addresses this issue next.

### 3. The January 6 Continuance

The Court's written explanation about why circumstances warranted an ends-of-justice continuance is contained in the Scheduling Order it issued following the January 6 Status Conference:

> The Court held a Status Conference on January 6, 2014, at which time the parties informed the Court that they have met and conferred about the case, and that discovery is extensive and ongoing. Based on the complex nature of the case, as previously discussed in the parties' motions to designate this case complex, and the Court's Order designating the case as complex, Doc. 70, and based on

---

[1] A total of 64 days elapsed between June 6, 2013 (the date of Mr. Madkins' Rule 5 Arraignment, Doc. 43) and August 9, 2013 (the date codefendant Patmon filed his motion to toll the speedy trial clock, Doc. 114). Of those days, 23 are excludable due to the following motions filed by Mr. Madkins or one of his codefendants: Mr. Madkins' Rule 5 Arraignment (Doc. 43) (excluded 1 day); Mr. Madkins' first counsel's motion to withdraw (Doc. 43) (excluded 4 days); Mr. Madkins and codefendants' joint motion to designate the case as complex (Doc. 68) (excluded 1 day); codefendant Clark's motion to travel (Doc. 69) (excluded 3 days); Mr. Madkins' second counsel's motion to withdraw (Doc. 80) (excluded 3 days); codefendant Shaw's motion to marry (Doc. 95) (excluded 1 day); codefendant Shaw's motion for a medical examination (Doc. 101) (excluded 3 days); codefendant Clark's motion to travel (Doc. 110) (excluded 4 days); and codefendant Patmon's motion for an extension of time to file a motion to toll speedy trial (Doc. 114) (excluded 3 days). On August 19, 2013, codefendant Patmon filed his motion to toll speedy trial (Doc. 116). As a pending pretrial motion, it excluded time until November 14, 2013, when the Court terminated it and codefendant Taylor's similar motion to toll speedy trial (Doc 194). In its November 13 ruling, the Court granted an ends-of-justice continuance until it conducted a status conference on January 6, 2014. The effectiveness of that continuance is not challenged by Mr. Madkins' motion, and the Court otherwise concludes it was effective to exclude time until January 6, 2014.

counsel's representations at the January 6th hearing about their upcoming trial schedules, the Court has determined that the deadlines discussed at the status conference should be adopted, and that any period of delay resulting from the schedule below shall be excludable time as provided for by the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)[.]

Defendant argues that this Order is insufficient to exclude time under § 3161(h)(7)(B), for four reasons: (1) its failed to balance defendants' interests in a speedy trial against the ends of justice served by a continuance; (2) it mentioned only one of the four § 3161(h)(7)(B) factors, even though the statute requires the Court to discuss all four factors; (3) aside from describing discovery as extensive and ongoing, it failed to inquire about the nature or relevance of such discovery; and (4) it failed to explain with specificity why a continuance of 270 days was necessary.

The government argues that Mr. Madkins' interpretation of *Toombs* is too narrow and is inconsistent with other Tenth Circuit precedent. It notes that while the Court must make specific findings on the record, the record encompasses more than just the order granting the continuance. It also includes the "oral and written statements of both the district court and the moving party." *Toombs*, 574 F.3d at 1271. Additionally, the "district court need not articulate facts 'which are obvious and set forth in the motion for the continuance itself.'" *United States v. Occhipinti*, 998 F.2d 791, 797 (10th Cir. 1993) (quoting *United States v. Lattany*, 982 F.2d 866, 879 (3rd Cir. 1992)). Here, the Court concludes that such findings are present in the record as a whole and that it properly incorporated them into its rational for granting the continuance.

Mr. Madkins' codefendants' motions make clear that a continuance was necessary for their counsel to represent them adequately. *See* Doc. 116 at 2 ("the ends of justice would be served by granting defendant's request because he believes the extension he is requesting is needed for his attorney to adequately represent him."); Doc. 192 at 2 ("[A]dditional time is

needed for defense counsel to review the voluminous discovery in this case with defendant and for counsel to confer with defendant about the evidence and the various issues this case may ultimately present.  Failure to grant defendant additional time would deny counsel for the defendant the time needed for effective preparation either for trial or for resolution short of trial . . . . [T]he ends of justice served by granting this motion outweigh the best interests of the public and defendant in a speedy trial."); Doc. 217 at 5 ("This continuance is in the best interest of the accused, the government and the public, as everyone involved can make an informed decision . . . .  Failure to grant additional time would deny counsel for the defendant the reasonable time necessary for effective preparation . . . for either a plea or a trial.").  Contrary to Mr. Madkins' characterization, the record incorporated by the Court, given the complexity of the case and the volume of discovery, establishes that the ends of justice favored an extension of time to permit the parties to process evidence, file pretrial motions, and prepare defenses.

Moreover, by its terms, § 3161(h)(7)(A) authorizes the Court to make such findings orally.  The transcript of the January 6 Status Conference reveals that the Court addressed all relevant § 3161(h)(7)(B) factors, and not just the complexity of the case, as Mr. Madkins asserts.  *See United States v. Watson*, 766 F.3d 1219, 1233 (10th Cir.) *cert. denied*, 135 S. Ct. 735 (2014) (district court is not required to discuss explicitly the § 3161(h)(7)(B) factors that are inapplicable (citing *Occhipinti*, 998 F.2d at 798)).  In addition to addressing the case's complexity, the Court also addressed the need to permit new defendants to catch up with the voluminous and ongoing discovery, Transcript of Status Conference at 5:14-25, and the need to accommodate the extensive pretrial litigation the parties had anticipated.  *Id.* at 16:4-13.  Significantly, it credited Mr. Madkins and his codefendants' interest in a speedy trial but ultimately concluded that a shorter continuance was not feasible.  *Id.* at 14:4-25.  This balancing,

conducted on the record, is far more detailed than the conclusory statements that the Tenth Circuit found deficient in *Toombs*.  And the Court concludes it is sufficient to exclude the delay occasioned by the continuance from Mr. Madkins' 90-day pretrial detention clock.  Because this and other excludable events (which Mr. Madkins does not challenge in his motion) cover the time period from January 6 to the issuance of this Order, Mr. Madkins' pretrial detention has not exceeded 90 non-excludable days.  The Court thus denies Mr. Madkins' motion for release under 18 U.S.C. § 3164(b).

### B.  Mr. Madkins' Motion Under the Fifth Amendment

Mr. Madkins next argues that the length of his pretrial detention (nearly 600 days) has rendered his detention punitive rather than regulatory, thereby violating his due process rights under the Fifth Amendment to the United States Constitution.  In support of his argument, Mr. Madkins relies on a series of cases that the Tenth Circuit discussed favorably in *United States v. Theron*, 782 F.2d 1510 (10th Cir. 1986) (citing *United States v. Columbo*, 777 F.2d 96, 101 (2d Cir. 1985); *United States v. Lofranco*, 620 F. Supp. 1324 (N.D.N.Y. 1985); *United States v. Hazzard*, 598 F. Supp. 1442, 1451 n.5 (N.D. Ill. 1984)).  These cases suggest that pretrial detention of similar or even shorter durations than Mr. Madkins' can violate a defendant's due process rights.  But there is an obvious and important difference between the litigation strategy of the *Theron* defendant and Mr. Madkins.  In *Theron*, the defendant "moved for a severance and an immediate trial, did not join any of his codefendants' motions, and was willing to be tried immediately even if it meant waiving certain rights." *Id.* at 1512.  By contrast, Mr. Madkins has pursued a litigation strategy that is inconsistent with a credible speedy-trial demand.

Apart from his motions for new counsel and the motions his codefendants filed, Mr. Madkins has filed many substantive pretrial motions.  They include:  a motion for a *James*

hearing (Doc. 371), a motion to suppress a search of his person (Doc. 374), three separate motions to suppress wiretap evidence (Docs. 375-77), an objection to the government's request for cell-site location information (Doc. 422), a motion to reconsider the Court's order denying suppression of wiretap evidence (Doc. 441), two motions to suppress cell-site location information (Docs. 543, 544), and another motion asking the Court to reconsider its suppression order (Doc. 574).  And when the Court continued the October 28, 2014 trial date, at the government's request, it moved the trial date back seven months to June 1, 2015.  The Court selected this date to accommodate the stated objectives of the defendants—with Mr. Madkins leading these efforts—to file at least two more rounds of motions to suppress the cell-site location information the government had obtained.  Doc. 474.

In words, Mr. Madkins has asserted his desire for a speedy trial, but his conduct tells a different story.  In contrast to the *Theron* defendant, Mr. Madkins has not been willing to waive any rights to achieve a speedy trial.  As the Court explained when it considered a similar argument asserted by a codefendant:

> Our system of laws wisely affords [the codefendant] a wide variety of rights and he may invoke every one of them if he and his counsel believe it is in his interest to do so.  But [the codefendant] cannot invoke these rights and in his next breath complain about the time it takes to present, understand, and resolve the issues he has raised.  *Theron* is clear on this point: Extending the 90-day limit "is constitutionally permissible.  Delays, for example, that the defendant [has] caused would not raise a problem."  782 F.2d at 1516.

Doc. 542 at 6.  Under these circumstances, the Court cannot characterize Mr. Madkins' pretrial detention as "punitive."  Instead, the length of his detention is a foreseeable consequence of the aggressive pretrial litigation strategy he has chosen to pursue.  The Court therefore denies Mr. Madkins argument under the Fifth Amendment.

### C. Defendant Albert Banks' Motion to Join Mr. Madkins' Motion for Release

Defendant Albert Banks has filed a motion seeking to join Mr. Madkins' motion for release (Doc. 564). Mr. Banks argues that, aside from his arraignment occurring three days before Mr. Madkins,' there are no important differences between the two defendants' pretrial detention circumstances. *See* Doc. 9. The Court agrees that joinder of these motions is proper and thus will reach the merits of Mr. Madkins' arguments as they apply to Mr. Banks.

These defendants' similar circumstances require a similar result. The time that the Court determined as excludable against Mr. Madkins' pretrial detention clock is also excludable on Mr. Banks' clock. His additional three days of confinement does not push his detention over § 3164(b)'s 90-day limit. So his constitutional argument fails the same reasons as Mr. Madkins.' Mr. Banks, along with his codefendants, has chosen to file many pretrial motions, which necessarily require additional time for the parties to brief and the Court to resolve. *See*, *e.g.*, Docs. 342, 344, 423, 424, 431, 434, 438, 439, and 447. Because many of the delays in this case are attributable to Mr. Banks and his codefendants, they present no constitutional violation under the Tenth Circuit's analysis in *Theron*. Accordingly, the Court denies Mr. Banks' request for release.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Martye Madkins III's Motion for Release (Doc. 557) is denied. Defendant Albert Banks' motion joining in Mr. Madkins argument (Doc. 564) also is denied

**IT IS SO ORDERED.**

**Dated this 15th day of April, 2015, at Topeka, Kansas.**

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge