IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ALBERT DEWAYNE BANKS (01),<br><br>　　　　　Defendant. | Case No. 13-40060-01-DDC |

## MEMORANDUM AND ORDER

This case is before the court on remand from the United States Court of Appeals for the Tenth Circuit. The remand follows the Supreme Court's decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), ruling that the government's seizure of historical cell-site location information ("CSLI") under an 18 U.S.C. § 2703(d) order does not generally satisfy the Fourth Amendment's warrant requirement. On remand, defendant Albert DeWayne Banks argues the court should vacate his convictions because the government relied on evidence dependent on CSLI acquired under a § 2703(d) order. The government responds, arguing: (1) the court's alternative discussion about probable cause before issuing the § 2703(d) order rendered the § 2703(d) order a de facto warrant; (2) the good faith exception applies where it seized the CSLI under a § 2703(d) order before the Supreme Court decided *Carpenter*; and (3) the error in admitting the CSLI-dependent evidence was harmless beyond a reasonable doubt. The court concludes its probable cause discussion was dicta that did not convert the § 2703(d) order into a warrant. And, the court concludes the government waived its good-faith argument by not raising it before the Tenth Circuit. But, the court concludes admission of the CSLI-dependent evidence was harmless beyond a reasonable doubt for all counts of conviction. The court thus denies Mr. Banks relief on his convictions.

## I. Pre-*Carpenter* Factual and Procedural Background

In 2012, Kansas authorities, through a series of controlled purchases, determined Mr. Banks, in concert with other named defendants, was selling cocaine. To gain evidence about the nature and scope of the drug enterprise, authorities sought a series of state-court wiretap orders under Sections 22-2514, *et seq.*, of the Kansas Statutes Annotated. Doc. 1064 at 22–28. Judge David R. Platt, a District Judge in Kansas's Eighth Judicial District, issued at least nine orders authorizing wiretaps under Kansas law. *See* Docs. 379-1, 379-2, 379-3, 379-5, 379-7, 379-9, 379-10, 379-11, 379-13, 379-15 (wiretap orders for all defendants). The orders permitted authorities to tap phones belonging to members of the drug conspiracy, including two phones associated with Mr. Banks: (1) a prepaid Sprint line ending in 6704, believed to belong to Mr. Banks but with no subscriber information; and (2) a Sprint line ending in 9771, believed to belong to Mr. Banks but subscribed to a Glenda Robinson.[1] Docs. 379-2, 379-13. Judge Platt issued the first of the orders authorizing a wiretap on a phone associated with Mr. Banks on March 5, 2013. Doc 379-2 at 8.

Under Kansas law, the wiretap orders only permitted authorities to intercept communications within Judge Platt's territorial jurisdiction—i.e., the four counties comprising Kansas's Eighth Judicial District. *See* Kan. Stat. Ann. § 22-2516(3) ("Upon such application the judge may enter an *ex parte* order, as requested or as modified, authorizing the interception of wire, oral or electronic communications within the territorial jurisdiction of such judge[.]"). But, authorities had tapped cellular communications from a location outside of those four counties without first establishing that the phone subject to a wiretap order was within one of the four

---

[1] At the May 21, 2019, remand hearing, Mr. Banks proffered that he owned and used phone lines ending in 6704 and 9771. The government withdrew then its argument that Mr. Banks lacked standing to challenge the gathering of CSLI from those lines.

2

counties when tapped. Doc. 517 at 3. Information from the tapped communications helped authorities understand Mr. Banks's role in the drug conspiracy.

A Second Superseding Indictment charged Mr. Banks with (1) one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) (Count 1); (2) three counts of distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (Counts 11, 12, and 18); and (3) three counts of distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Counts 8, 15, and 16). Doc. 195 at 2–3, 6–8, 10–11. Count 1 alleged the conspiracy existed between June 1, 2012, until on or about May 16, 2013. This period overlapped with authorities tapping phones under the orders issued by Judge Platt. *See id.* at 2. Counts 16 and 18 also involved conduct that occurred after Judge Platt issued the first wiretap order. *See id.* at 10–11. But, Counts 8, 11, 12, and 15 involved conduct completed before Judge Platt issued the first wiretap order. *Id.* at 4–10.

Mr. Banks moved to suppress the evidence acquired from the tapped cellular devices, arguing the wiretaps had occurred outside Judge Platt's territorial jurisdiction. *See* Doc. 431 (motion to join motion to suppress filed by other defendants). Ruling on a motion to suppress filed in this case, the court concluded the government could introduce the contents of a tapped cellular communication only if it could establish that a tapped phone was within the Eighth Judicial District when the tap occurred. Doc. 517 at 4–5. To satisfy this threshold requirement for admission, the government sought 18 U.S.C. § 2703(d) orders to acquire CSLI from the cellular providers about the tapped phones. Doc. 417 at 3–4. Section 2703(d) authorizes a court to issue an order permitting the government to obtain CSLI from a cellular provider if the government "offers specific and articulable facts showing that there are reasonable grounds to believe that the [CSLI records] are relevant and material to an ongoing criminal investigation."

3

18 U.S.C. § 2703(d). Mr. Banks challenged the constitutionality of § 2703(d)'s reasonable suspicion threshold for acquiring CSLI, arguing that the Fourth Amendment applied to seizure of CSLI and thus required a probable cause showing. The government argued that § 2703(d) comported with the Constitution, contending the Fourth Amendment did not apply where third-party cellular providers maintained the CSLI. Doc. 429. The government neither argued in the alternative that its evidence satisfied the Fourth Amendment's probable cause threshold nor sought a warrant. *See id.*

In an order indicating an intent to issue § 2703(d) orders, the court concluded that seizing CSLI from a cellular provider did not involve a search of a defendant under the Fourth Amendment because the defendant already had revealed his CSLI to the cellular provider. Doc. 440 at 6–8 (citing *In re United States Application for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013)). In the alternative, the court sua sponte considered whether the government had advanced sufficient evidence and papers to secure a warrant for the CSLI. *Id.* at 11. The court concluded: (1) "By establishing that the phone calls are evidence of crimes, the government has also established probable cause for the related CSLI because such information reveals the defendants' location at the time of each call"; and (2) the case agent's affidavits in the applications for the §2703(d) orders satisfied the Fourth Amendment's "oath or affirmation requirement." *Id.* Following this order indicating an intent to issue § 2703(d) orders, the government submitted an application for a § 2703(d) order for several Sprint lines, including lines ending in 6704 and 9771. *See* Doc. 452 at 1, 3.

The court then issued the requested § 2703(d) orders. Docs. 450–52. Sprint responded to the § 2703(d) order, providing the government with CSLI for phone numbers ending in 6704 and 9771. Based on the CSLI, the government established that certain cellular communications

occurred while one of Mr. Banks's tapped phones was within Kansas's Eight Judicial District. This enabled the government to admit 11 cellular communications to which Mr. Banks was a party at trial. *See* Doc. 1303-1 at 1–2 (summary of phone calls admitted during trial).

A jury convicted Mr. Banks on all counts.[2] Doc. 766. The court sentenced Mr. Banks to concurrent terms of 360 months' imprisonment on each count. Doc. 963 at 3. On appeal, Mr. Banks challenged the constitutionality of § 2703(d) and the government's use of CSLI to establish that particular tapped cellular communications had occurred while a tapped phone was located within the four counties comprising Kansas's Eighth Judicial District. *United States v. Banks*, 706 F. App'x 455, 457 (10th Cir. 2017), *vacated*, 138 S. Ct. 2707 (2018). The Tenth Circuit affirmed Mr. Banks's convictions, concluding on the CSLI issue that "the government's request for CSLI is not a search within the meaning of the Fourth Amendment" and that "§ 2703(d) is not unconstitutional."[3] *Id.* at 457. Mr. Banks filed a petition for a writ of certiorari. Doc. 1191. While Mr. Banks's petition for a writ of certiorari was pending, the Supreme Court decided *Carpenter*, a case addressing the constitutionality of § 2703(d) orders for CSLI.

**II.** *Carpenter* **Decision**

In *Carpenter*, the authorities had acquired § 2703(d) orders for CSLI for several suspects in a theft ring. *Carpenter*, 138 S. Ct. at 2212. Over Mr. Carpenter's motion to suppress, the government introduced the CSLI at trial to place him at or near the scene of several thefts. *Id.* at 2212–13. A jury convicted Mr. Carpenter. *Id.* at 2213. On appeal, the United States Court of

---

[2] Due to an issue with the jury instructions on Count 1, the court reduced Mr. Banks's Count 1 conviction to a conviction under 18 U.S.C. § 841(b)(1)(C). *See* Doc. 963 at 2 (listing convictions for purposes of sentencing).

[3] On appeal, Mr. Banks also challenged his sentence. The Tenth Circuit concluded the court did not make adequate factual findings to support two matters that had contributed to Mr. Banks's offense level. *Banks*, 706 F. App'x at 458–60. The Tenth Circuit thus vacated Mr. Banks's sentence and remanded the case for resentencing. *Id.* at 460. The court will address the resentencing aspect of the remand in a separate proceeding.

5

Appeals for the Sixth Circuit rejected Mr. Carpenter's challenge to § 2703(d), concluding CSLI was not subject to Fourth Amendment protection because, under the Third-Party Doctrine, a cellular phone user voluntarily provides his CSLI to his cellular provider. *Id.*

The Supreme Court, however, rejected the proposition that the Third-Party Doctrine applies to historical CSLI. *Id.* at 2217, 2219–20. The Court concluded that "individuals have a reasonable expectation of privacy in the whole of their physical movements" such that authorities may not "'secretly monitor and catalogue every single movement of an individual[] . . . for a very long period'" without involving Fourth Amendment protections. *Id.* (quoting *United States v. Jones*, 565 U.S. 400, 429 (2012) (Alito, J., concurring)).

Concluding that seizing historical CSLI from a cellular provider amounts to a search under the Fourth Amendment, the Court held "that the Government must generally obtain a warrant supported by probable cause before acquiring [historical CSLI]." *Id.* at 2221. Also, the Court observed that the government's acquisition of historical CSLI "in the absence of a warrant . . . is reasonable only if it falls within a specific exception to the warrant requirement." *Id.* (quoting *Riley v. California*, 134 S. Ct. 2473, 2482 (2014)). The Court concluded its affirmative analysis by stating, "an order issued under Section 2703(d) . . . is not a permissible mechanism for accessing historical cell-site records. Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant." *Id.* at 2221.

### III.    Post-*Carpenter* Procedural Background and Arguments on Remand

The Supreme Court vacated the Tenth Circuit's judgment and remanded Mr. Banks's case "for further consideration in light of *Carpenter*." *Banks v. United States*, 138 S. Ct. 2707 (2018). On remand, the Tenth Circuit ordered the parties to file simultaneous briefs to "(1) identify the issues *Carpenter* affects, and (2) address how the Supreme Court's analysis impacts,

if at all, the positions taken by the parties in the briefs filed previously in the [Tenth Circuit]." *United States v. Banks*, No. 15-3324, Order dated July 31, 2018. The government argued *Carpenter* did not necessitate vacating Mr. Banks's convictions because (1) the district court alternatively concluded that probable cause supported the § 2703(d) order; and (2) the admission of the tapped cellular communications was harmless beyond a reasonable doubt. Mr. Banks argued (1) this court's statements about probable cause did not salvage the admission of the tapped cellular communications where no warrant was issued for the CSLI; and (2) admitting the tapped cellular communications tainted his convictions. Mr. Banks also contended that any good-faith exception argument that the government might raise on remand was waived because the government had not raised it on direct appeal. The Tenth Circuit "remanded the case[] to the district court to determine whether its alternative holding survives *Carpenter* and for further proceedings consistent with the Supreme Court's decision." *United States v. Banks*, No. 15-3324, Order/Mandate dated Oct. 18, 2018 at 4; *see also id.*, Amended Mandate dated Jan. 16, 2019.

On remand, the government advances three arguments for sustaining Mr. Banks's convictions: (1) the court's statements about probable cause eliminate the *Carpenter* issue because they transformed the § 2703(d) order into a de facto warrant;[4] (2) even if the § 2703(d) order in this case cannot be viewed as a warrant, the good-faith exception applies because *Carpenter* issued after the government had acquired and executed the § 2703(d) order for Mr. Banks's CSLI; and (3) any error in admitting the contents of the cellular communications dependent on Mr. Banks's CSLI was harmless beyond a reasonable doubt given the other

---

[4] The government has not advanced the broader argument that a search is reasonable for purposes of the Fourth Amendment if it occurs after a finding of probable cause by a neutral judge. The court thus confines its analysis of the effect of its earlier reference to probable cause in its order indicating an intent to issue § 2703(d) orders to the argument raised by the government.

7

evidence supporting the convictions. In response, Mr. Banks argues: (1) the court's statements about probable cause are dicta and do not fall within any recognized exception to the Fourth Amendment warrant requirement; (2) the good-faith exception does not apply because the government has waived the argument and because the government knew about Mr. Banks's challenge to the constitutionality of § 2703(d) before acquiring the § 2703(d) order; and (3) error in admitting the cellular communications was not harmless beyond a reasonable doubt, particularly on Count 1.

## IV. Analysis

### A. Statements About Probable Cause

In its ruling on the government's requests for § 2703(d) orders, the court stated that the requests were supported by probable cause and affidavits from the case agent. The government argues the § 2703(d) order delivered to Sprint satisfied the core requirements of the Fourth Amendment, making the orders de facto warrants. Two reasons leave the court unconvinced that the § 2703(d) order delivered to Sprint was a de facto warrant.

First, the court's discussion of probable cause was dicta, not an alternative holding. The government requested three § 2703(d) orders and the court granted the requests. Section 2703(d) orders issue on a "showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). And, as the government conceded at the May 21, 2019, remand hearing, it did not seek a warrant or argue in the alternative that its evidence satisfied the probable cause standard. As a result, Mr. Banks had no reason to brief the probable cause issue. This is especially true where (1) other provisions of § 2703, *see* 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A), reference the government's capacity to

8

acquire a warrant for electronic communications, such as CSLI, that are held by cellular providers; and (2) the government continued its pursuit of § 2703(d) orders, rather than warrants, even after the court, sua sponte, had opined about probable cause. The court's probable cause discussion thus not only was unnecessary to decide the issue before the court—whether to issue the § 2703(d) orders—but also, it was conducted without Mr. Banks having reason to contest the probable cause position adopted by the court. And, it is not apparent why the court's decision to opine about probable cause should turn a § 2703(d) order into a warrant or relieve the government of its duty to seek a warrant before gathering CSLI. To be certain, the government does not identify any Supreme Court case recognizing an exception to the warrant requirement in a situation where the government did not seek a warrant but a court, in dicta, happened to opine about probable cause.[5]

Second, *Carpenter* makes clear that the government must present a cellular carrier with a *warrant* before gathering CSLI. *Carpenter*, 138 S. Ct. at 2221. Here, the government presented Sprint with a § 2703(d) order. Doc. 452. This order was not a warrant. And, although this court's order indicating an intent to issue § 2703(d) orders discussed probable cause, the § 2703(d) order did not contain any mention of the court's alternative probable cause discussion.[6] *See id.* Thus, the vehicle actually used by the government to acquire CSLI did not comply with *Carpenter*. *See Carpenter*, 138 S. Ct. at 2221.

---

[5] The only authority the government cites in support of its argument is *United States v. Williams*, No. CR418-147, 2019 WL 1612833, at *8 (S.D. Ga. Feb. 27, 2019), *report and recommendation adopted by* 2019 WL 1601375 (S.D. Ga. Apr. 15, 2019). The court finds the facts of *Williams* easily distinguishable because the CSLI seizure at issue in *Williams* occurred under orders that required a probable cause showing for the orders to issue. *Id.* at *10–11.

[6] When it submitted applications for § 2703(d) orders after the court's order indicating an intent to issue § 2703(d) orders, the government signaled its belief that the order indicating an intent to issue the § 2703(d) orders was not a warrant or a document sufficient to compel Sprint to turn over Mr. Banks's CSLI. Put another way, if the government had believed the court's order indicating an intent to issue § 2703(d) orders had the force of a warrant—

### B. Government Waived Good-Faith Exception

The court concludes the government failed to raise its good-faith exception argument to the Tenth Circuit, both in its response brief on direct appeal and in its supplemental brief after remand from the Supreme Court. The government thus waived reliance on the good-faith exception.

#### 1. Mandate Rule

"'The law of the case doctrine, self-imposed by the courts, operates to create efficiency, finality, and obedience within the judicial system' so that 'an appellate decision binds all subsequent proceedings in the same case.'" *United States v. Amedeo*, 487 F.3d 823, 829 (11th Cir. 2007) (quoting *United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996)). "The mandate rule is simply an application of the law of the case doctrine to a specific set of facts." *Id.* at 830 (quoting *Tamayo*, 80 F.3d at 1530).

Under the mandate rule "[a] lower court is 'bound to carry the mandate of the upper court into execution and cannot consider the questions which the mandate laid at rest.'" *Estate of Cummings by & through Montoya v. Cmty. Health Sys., Inc.*, 881 F.3d 793, 801 (10th Cir. 2018) (quoting *Sprauge v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). When it hears a case on remand under a mandate, a district court "cannot carry it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Amedeo*, 487 F.3d at 830 (quoting *Tamayo*, 80 F.3d at 1530). Instead, "a district court must comply strictly with the mandate rendered by the reviewing court." *Huffman v. Saul*

---

the position it argues now—then the government could have presented that order to Sprint without seeking a § 2703(d) order from the court.

*Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001) (quoting *Ute Indian Tribe v. Utah*, 114 F.3d 1513, 1520–21 (10th Cir. 1997)).

"Failing to raise an issue on appeal . . . has the same consequences for that litigation as an adverse appellate ruling on that issue." *Id.* "Any issue that could have been but was not raised on appeal is waived and thus not remanded." *Id.* (quoting *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002)). And, "[p]arties cannot use the accident of remand as an opportunity to reopen waived issues." *Id.* (quoting *Husband*, 312 F.3d at 251).

### 2. Application of Mandate Rule to Direct Appeal

The government's response brief in Mr. Banks's direct appeal did not raise an argument under the good-faith exception. Under typical application of the mandate rule, the government's failure to raise the good-faith exception would waive the argument for purposes of appeal and remand. The government, however, contends that it is not appropriate to apply the mandate rule here because it had no duty to raise its good-faith exception argument where Mr. Banks neither argued to exclude the CSLI nor contended that the benefits of deterrence justified application of the exclusionary rule. The government's argument takes an unreasonably narrow view of the arguments raised in Mr. Banks's direct appeal. And, its contention that Mr. Banks did not seek to exclude the CSLI is at odds with the Tenth Circuit's opinion.

In this court, Mr. Banks contended that the Fourth Amendment precluded the government from acquiring CSLI through a § 2703(d) order and that the court should (1) not have admitted CSLI at a pre-trial proceeding and (2) have suppressed the tapped cellular communications dependent on the CSLI. On direct appeal, Mr. Banks challenged this court's adverse ruling on those issues. And, the Tenth Circuit recognized Mr. Banks as arguing that "the district court erred in . . . admitting CSLI obtained without a warrant." *See United States v. Thompson*, 866

F.3d 1149, 1152 (10th Cir. 2017); *see also Banks*, 706 F. App'x at 457 (recognizing that Mr. Banks "joins in and adopts" the arguments raised by his co-defendant, Mr. Thompson). There is no meaningful distinction between arguing that the lower court erred by admitting evidence and arguing that the lower court should have excluded the evidence. Also, the government's contention that it had no duty to raise a good-faith exception argument cannot be squared with its decision to raise a harmless error argument on appeal—an argument that matters only if evidence that should have been *excluded* was improperly admitted at trial.

Under the law of the case doctrine, the government's argument that Mr. Banks did not seek exclusion is foreclosed by the Tenth Circuit's contrary statement about the nature and scope of Mr. Banks's arguments. Once Mr. Banks argued that the Government needed a warrant and that this court should have excluded the evidence, the burden shifted to the government to argue that an exception to the warrant requirement—such as the good-faith exception—applied. The government made no such argument. By failing to raise that argument, the government waived a good-faith argument for purposes of direct appeal and for purposes of the mandate issued by the Tenth Circuit after its decision in *Banks*, 706 F. App'x 455.

### 3. Application of Mandate Rule to Supplemental Briefing

Because the Supreme Court vacated the Tenth Circuit's decision in *Banks*, 706 F. App'x 455, the Tenth Circuit recalled the mandate it issued following that decision. *United States v. Banks*, No. 15-3324 (10th Cir. July 30, 2018). This arguably allowed the government a second bite at the apple, another chance to make a good-faith exception argument. But, although the Tenth Circuit ordered simultaneous supplemental briefing to identify the issues implicated by the Supreme Court's decision in *Carpenter*, the government again failed to make the good faith

12

exception argument.[7] As a result, the government waived the argument for the post-Supreme Court remand proceedings before the Tenth Circuit.

By not raising the good-faith exception either in its brief on direct appeal or in its supplemental brief on remand, the government waived the argument. And, under the mandate rule, a waived issue is not part of the remand from Tenth Circuit to this court. *Huffman*, 262 F.3d at 1132.

C.  **Harmless Error**

1.  **Governing Standard**

"Most constitutional errors, including Fourth Amendment violations, do not require reversal of a conviction if the court concludes the error was harmless beyond a reasonable doubt." *United States v. Russian*, 848 F.3d 1239, 1248 (10th Cir. 2017) (citing *Chambers v. Maroney*, 399 U.S. 42, 52–53 (1970)). "In cases that are decided by a jury, a court will only find a constitutional error harmless if the court can conclude beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *United States v. Benard*, 680 F.3d 1206, 1213 (10th Cir. 2012)). "To say that an error did not contribute to the verdict is to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *United States v. Perdue*, 8 F.3d 1455, 1469 (10th Cir. 1993) (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). Put another way, a court conducting a

---

[7] The government disputes this conclusion by quoting a line from its supplemental remand brief. This line asserted: "If the CSLI was obtained in violation of the Fourth Amendment, should the exclusionary rule be applied to either Thompson's or Banks' calls [admitted at trial]." Doc. 1356 at 21. The government contends that its reference to the exclusionary rule necessarily presented the good-faith exception argument. But, the government's remand brief never identifies the good-faith exception; meanwhile, asking whether the exclusionary rule applies could just as easily be understood as a reference to whether this court's probable cause discussion turned the § 2703(d) order into a de facto warrant. In any event, passing, vague, and undeveloped references to a principle of law in an appellate brief are insufficient to preserve an issue for appellate review. *See Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine.").

harmless error analysis "must determine 'whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.'" *Russian*, 848 F.3d at 1248 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)).

Factors to consider in conducting a harmless error analysis include: (1) "the strength of the prosecution's case absent the erroneously admitted evidence"; (2) "the materiality of the evidence to critical facts in the case"; and (3) "the prosecutor's actions with respect to the evidence at issue." *United States v. Bailey*, 743 F.3d 322, 342–43 (2d Cir. 2014). "The burden is on the government to prove beyond a reasonable doubt that an error is harmless." *Benard*, 680 F.3d at 1213 (quoting *United States v. Miller*, 111 F.3d 747, 751 (10th Cir. 1997)).

### 2. Counts 8, 11, 12, and 15

The government has sustained its burden on these four counts. The CSLI-dependent cellular communications all occurred *after* the conduct supporting the convictions on Counts 8, 11, 12, and 15. The cellular communications thus didn't contribute to the government's evidence proving the elements of these four counts. Instead, the government relied on direct evidence to prove these four counts—*i.e.*, audio recordings of phone calls arranging controlled purchases of cocaine and audio and video recordings of the controlled purchases.[8] And, this direct evidence was very strong as it provided the jury a first-hand view of Mr. Banks's conduct supporting the charges in Counts 8, 11, 12, and 15.

### 3. Counts 16 and 18

Although some of the CSLI-dependent communications occurred before the substantive conduct supporting the convictions on Counts 16 and 18, strong non-CSLI-dependent evidence

---

[8] The audio recordings of the phone calls were the product of authorities recording a confidential informant's conversations, and not the result of tapping Mr. Banks's cellular phones under the authority of the Kansas wiretap orders.

14

supported the convictions. Count 16 charged Mr. Banks with distributing cocaine base on or about March 14, 2013. The government supported the elements of this charge with audio and video/photographic evidence of the transaction and the case agent's testimony about his observations during the transaction. Doc. 1063 at 287–95. Count 18 charged Mr. Banks with distributing cocaine base on or about March 18, 2013. Once again, the government presented audio and video/photographic evidence of the transaction, as well as testimony from the case agent about the transaction. *Id.* at 295–301.

The direct evidence of Mr. Banks's guilt on Counts 16 and 18 was extremely strong. The CSLI-dependent cellular communications were not played or discussed in close proximity to the testimony and presentation of audio, video, or photographic evidence supporting Counts 16 and 18. The CSLI-dependent cellular communications did not materially contribute to the evidence supporting the convictions on Counts 16 and 18. The court thus concludes the government has sustained its burden to show that the constitutional error of admitting the CSLI-dependent evidence was harmless beyond a reasonable doubt for Counts 16 and 18.

### 4. Count 1

Mr. Banks's Count 1 conviction, ultimately, was one for conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C).[9] The elements of this offense required proof that:

> *First*: two or more persons agreed to violate the federal drug laws;
> *Second*: the defendant knew the essential objective of the conspiracy;
> *Third*: the defendant knowingly and voluntarily involved himself in the conspiracy; and
> *Fourth*: there was interdependence among the members of the conspiracy.

---

[9] *See* Footnote 2, above.

Tenth Circuit Pattern Jury Instruction 2.87 (Controlled Substances—Conspiracy 21 U.S.C. § 846). And, because a § 841(b)(1)(C) offense does not carry an enhanced penalty based on drug quantity, a jury need only find that the conspiracy involved an agreement to distribute some detectable amount of cocaine base. *See id.* (identifying fifth element as "the overall scope of the conspiracy involved at least [name amount] of [name controlled substance]" but noting that the fifth element needs only be submitted to the jury "where the statute imposes increased maximum penalties based on the quantity of the substance").

Under the Tenth Circuit Pattern Jury Instructions for a § 841(b)(1)(C) offense, as well as under the first four elements of the instructions given to the jury in Mr. Banks's case, the Count 8 evidence plainly supported a conspiracy conviction. The unchallenged evidence showed that (1) Mr. Thompson arranged the sale of cocaine base to the confidential informant; and (2) Mr. Banks, acting in concert with Mr. Thompson, delivered and distributed the cocaine base. If the court had instructed the jury on the §§ 846/841(b)(1)(C) offense, then the court would have no difficulty concluding that the admission of the CSLI-dependent communications was harmless error.

But, the analysis here is more complicated. Mr. Banks was charged with a conspiracy offense under §§ 846/841(b)(1)(A). And, the court instructed the jury on a fifth element, one requiring the jury to find that "the overall scope of the conspiracy involved at least 280 grams of cocaine base (crack cocaine)." Doc. 763 at 21.

In his remand briefing, Mr. Banks acknowledges that his "substantive counts, put together, involved . . . 191 grams." Doc. 1329 at 9. The court must then determine if the substantive counts for Mr. Banks's co-defendants, upon which the jury could have relied in reaching the 280-gram total, involved 89 grams or more of cocaine base. The court phrases the

16

question in this manner because the instruction given to the jury phrased the fifth element of the conspiracy offense to ask whether the defendants, as a collective group, agreed to distribute 280 grams or more of cocaine base. But, the instructions did not ask the jury to make a specific drug quantity finding about Mr. Banks's participation in the conspiracy.[10] *See* Doc. 763 at 24 (instruction that "the jury must find an agreement by the defendants to distribute more than 280 grams of cocaine base"). When the court reduced Mr. Banks's §§ 846/841(b)(1)(A) conviction to a §§ 846/841(b)(1)(C) conviction, it rendered this fifth element, in effect, extraneous to what the government needed to prove to establish the ultimate offense of conviction. But, since the harmless error analysis asks the court whether the jury would have returned the same verdict in "*this* trial" but for the constitutional error, *Russian*, 848 F.3d at 1248 (quoting *Sullivan*, 508 U.S. at 279), the court must determine if the jury, absent the CSLI-dependent evidence, would have found the government had proved the fifth element, as stated in the actual instructions.

As the following chart shows, the remaining substantive counts against Mr. Banks's co-defendants were supported by evidence clearly establishing the following weights:

| Count Number | Weight | Citation to Record |
|---|---|---|
| Count 2 | 0.20 grams | Doc. 1068 at 148 |
| Count 3 | 0.15 grams | Doc. 1068 at 149 |
| Count 4 | 0.33 grams | Doc. 1068 at 150 |
| Count 5 | 1.01 grams | Doc. 1068 at 152 |
| Count 6 | 0.28 grams | Doc. 1068 at 124 |
| Count 7 | 2.7 grams | Doc. 1068 at 154–55 |

---

[10] The court must presume that the jury followed the instructions administered by the court. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

| Count 9  | 27.74 grams  | Doc. 1068 at 159 |
| Count 10 | 27.74 grams  | Doc. 1068 at 160 |
| Count 13 | 82.95 grams  | Doc. 1068 at 164 |
| Count 14 | 27.22 grams  | Doc. 1068 at 165 |
| Total    | 170.32 grams |                  |

The drug quantities purchased by confidential informants involving conduct under Counts 2–7, 9–10, and 13–14, when combined with Mr. Banks's substantive counts, provide ample basis for the jury to conclude that the conspiracy involving Mr. Banks involved more than 280 grams. But, the government's non-CSLI-dependent evidence proving both the drug quantity and the larger Count 1 conspiracy was not limited to the evidence supporting the substantive counts. Instead, the government also offered testimony from cooperating witnesses who were charged in the conspiracy.

Although the government offered the CSLI-dependent evidence in support of the Count 1 charge against Mr. Banks, the court concludes admission of that evidence was harmless beyond a reasonable doubt when the court considers the role of the CSLI-dependent evidence relative to all the evidence supporting the Count 1 conviction.

## V.     Conclusion

The court denies Mr. Banks's relief on remand because, although it was constitutional error to admit the CSLI-dependent evidence, the error was harmless beyond a reasonable doubt.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Banks is denied relief on any of his convictions.

**IT IS FURTHER ORDERED BY THE COURT THAT** the case against Mr. Banks is set for resentencing on **November 4, 2019, at 1:30 p.m**. The court also directs the Courtroom Deputy to notify the United States Probation Office of this resentencing date, and direct it to prepare and circulate a new Presentence Investigation Report to counsel of record.

**IT IS SO ORDERED.**

**Dated this 29th day of July, 2019, at Kansas City, Kansas.**

                                        **s/Daniel D. Crabtree_____**
                                        **Daniel D. Crabtree**
                                        **United States District Judge**